[Crim. No. 8006. First Dist., Div. Two. June 15, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY E. KEIM, Defendant and Appellant.

## COUNSEL

Mintz, Giller, Himmelman & Mintz, Lincoln N. Mintz and Robert S. Shuken for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—On this appeal from a judgment entered on a jury verdict finding defendant, Rodney Keim, guilty of burglary (Pen. Code, § 459) and rape (Pen. Code, § 261) ( No. 42473), and revoking probation in another matter (No. 38324), the only question is whether the absence of defendant's counsel at a lineup violated the constitutionally grounded rules enunciated by *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. We conclude that the judgment must be reversed because the admission at the trial of evidence obtained in violation of these rules was not harmless within the meaning of *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

In view of our conclusion and the single issue presented, a brief summary of the pertinent facts will suffice. About 7 a.m. on April 26, 1968, the victim, Mrs. Shirley Velasquez, was in her bedroom when she heard a sound in the living room. As she entered the living room to investigate, a man grabbed her, threatened to kill her daughter, and succeeded in raping her. Her assailant wore a mask over the bottom part of his face and had covered his hair with a white rag. She succeeded in scratching him below the left eye.

Immediately after the attack, Mrs. Velasquez described her attacker as a dark Latin-type, about 5 feet 10 inches tall, with dark hair, weighing about 165 pounds, wearing a jacket, dark Levis and light brown boots. A neighbor, Mrs. Mary Williams, saw a blue-green pickup truck with an aluminum camper parked in the vicinity of the Velasquez home between 6 a.m. and 7:30 a.m. on the morning in question. Mrs. Williams' daughter, Karen, also saw the camper truck that morning and noticed a man wearing a dark jacket, dark pants and light boots walking toward the truck from the Velasquez home and then drive away. On May 5, 1968, defendant was stopped driving a 1956 Chevrolet pickup truck with a camper that resembled the vehicle described by Miss Williams. Defendant was the registered owner of the vehicle. At the trial, defendant's black nylon jacket and brown boots were admitted, without objection.

Prior to the trial, the court held a hearing to determine the admissibility of the identification evidence. At this hearing, Mrs. Velasquez testified that on April 27, she was shown a group of photographs by the Hayward police, but made no identification. However, one of the photographs resembled a man she had seen at her sister's house and whose features were similar to those of her assailant. She asked to see this individual, subsequently identified as Hector Morrero, in person. Acordingly, on May 6, a lineup was ar-

ranged with Morrero. Defendant was not in the lineup. Mrs. Velasquez recognized Morrero but did not identify him as her assailant.

Thereafter, Mrs. Velasquez was shown another group of photographs and identified defendant. On May 7, Mrs. Velasquez and Miss Williams attended a lineup at Santa Rita. Each independently identified defendant. Mrs. Velasquez stated that she observed scratches on his face. She did not notice whether the other participants in the lineup had scratch marks.

Karen Williams testified that prior to the lineup, she was shown a group of photographs and identified defendant as the person whom she had seen leaving the Velasquez home on the morning in question. When Miss Williams identified defendant in the lineup, he looked different than on the date of the offense. Miss Williams did not recall any scratches on defendant's face at the time of the lineup.

About 10 o'clock on the morning of May 7, Detective Francis advised defendant that a lineup was planned and of his right to have an attorney present. Defendant replied that he wanted to call his attorney, Mr. Nunes, and have him present, and then left to call his attorney. Shortly thereafter, defendant returned and stated that Nunes or a representative would be at Santa Rita for the lineup between 12:15 and 1 p.m. that afternoon. On the basis of this comunication, defendant was advised that the lineup would be conducted that afternoon.

Detective Francis left and returned to Santa Rita about noon with Miss Williams. Mr. and Mrs. Velasquez arrived about the same time. About 1:13 p.m., Deputy Knight informed Detective Francis that he had received a telephone call from Nunes' law office, indicating that a Mr. Crews would be handling defendant's case. By 1:15, neither Nunes nor Crews had arrived. About 1:20 p.m., Detective Francis called the Nunes office and was advised by a woman that Nunes was at lunch, could not be reached and that she knew nothing about a lineup. About 1:30 p.m., the lineup then proceeded without the presence of defense counsel.

Defendant stated that after being advised of his right to counsel on the morning of May 7, he spoke personally with Nunes and was advised that either Nunes or his associate Crews would be at Santa Rita at 1 p.m. at the lineup. Defendant indicated that he wanted counsel present and objected, as well as he could under the circumstances, to the conduct of the lineup without his attorney.

The trial court ruled that the officers had acted reasonably in proceeding with the lineup when defendant's counsel failed to appear, that the lineup was fair and there had been no violation of due process. The court then held that the lineup evidence was admissible.

■ The major contention on appeal is that the absence of defendant's counsel at the May 7, 1968 lineup constituted a violation of the rules enunciated in *United States* v. *Wade, supra,* and *Gilbert* v. *California, supra.* The question is one of first impression. The People argue that since defendant was advised of his right to counsel, the circumstances presented another "exception" to the *Wade-Gilbert* rules.

We cannot agree that the circumstances here presented constitute an exception to the *Wade-Gilbert* rules. *People* v. *Fowler,* 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], held that in the absence of an intelligent waiver,[1] the right to counsel extends to pre-information or pre-indictment lineups. The thrust of the *Wade-Gilbert* rules is to protect the Sixth Amendment rights of defendants by the presence of counsel at a lineup, if such a procedure is used. As noted in *People* v. *Fowler, supra,* page 347, *Wade* distinguishes lineup procedures from scientific analysis of fingerprints, blood, etc., for purposes of identification. It is common knowledge that since the *Wade-Gilbert* rules were enunciated, many law enforcement agencies have ceased to use lineup procedures. If, as here, the procedure is used, then defendant's rights must be scrupulously protected. Merely advising a deendant of his right to counsel is not sufficient.

Here, defendant had clearly chosen to exercise his right to counsel, had called his attorney, and had been told that someone would be present to represent him. The subsequent telephone call received by Deputy Knight confirmed the information provded by defendant and a reasonable inference could have been that Crews was probably on the way. Detective Francis knew Crews, an attorney practicing in southern Alameda County, but made no attempt to call him. When no one arrived to represent defendant, Detective Francis, at 1:20 p.m., called the Nunes office. Nunes was at lunch and his secretary knew nothing about the lineup. The lineup was conducted at 1:30 p.m. and was completed in 10 minutes.

While it is not our proper function to formulate precise rules, reasonable procedure would dictate first that the defense attorney be given as much notice as possible, particularly when the lineup is to be held at a place distant from the location of his office.[2] Second, once it is clearly established, as it was here, that counsel for defendant was to be present, the lineup should have been delayed. The brief wait of half an hour was clearly unreasonable.

---

[1]The People also argue that there was a "waiver" but nothing in the record supports such a contention. Rather, as indicated above, the record clearly and unequivocally indicates that defendant did not waive his right to counsel.

[2]We note that the trial court also commented: "I think it might be better in the future to give them a little more time to obtain counsel there at the lineup."

We think, in light of the telephone call received by Deputy Knight, it would have been more reasonable to wait longer and perhaps place another telephone call to Crews. The People argue that the officers did all that could be reasonably required of them. But so had defendant, who was in custody. There is no indication that defendant or his attorneys were in any way attempting to delay or frustrate the lineup. Such a brief delay during the initial state of a criminal proceeding is preferable to the longer delays occasioned by reversals and retrials.

Accordingly, we conclude, as did our Supreme Court in *People* v. *Fowler, supra,* at page 349, that the lineup of May 7, wherein defendant was identified by Mrs. Velasquez, was conducted in violation of defendant's Sixth Amendment rights because counsel was not present in his behalf and because defendant did not intelligently waive his right to the presence of counsel. ■ It was error of constitutional magnitude to admit evidence of the lineup itself and, under the rules announced by the United States Supreme Court, that error cannot be cured by any showing that the subsequent in-court identification had a source independent of the illegal lineup (*Gilbert* v. *California, supra*).

As also noted in *Fowler,* at page 350: "Upon retrial *in-court identification* evidence on the part of the two witnesses in question will be admissible only if the prosecution is able to show out of the presence of the jury that such identification had a source independent of the improper lineup. [Citations.] Questions on retrial concerning the admissiblity of evidence of pretrial photographic identifications, and the effect of such identifications upon in-court identification, will be governed by the opinion of the United States Supreme Court in *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967]."

■ Thus, the judgment here must be reversed unless we can conclude from the record "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (*Chapman* v. *California, supra,* p. 24 [17 L.Ed.2d at p. 710]). ■ In considering whether reversal is required under *Chapman,* we must exclude the testimony of the in-court, as well as the out-of-court identification, since it was not established in the absence of the jury nor did the trial court make the required finding that the in-court identification had a source entirely independent of the improper lineup. ■ With the exclusion of this effective identification testimony, the evidence connecting defendant with the crime charged is not sufficiently overwhelming to permit the conclusion that defendant was not materially prejudiced by the error in question. We emphasize the necessity on retrial for the trial court to

determine, in the absence of the jury, whether the in-court identification is independently based and is thus admissible.

The judgment is reversed.

Shoemaker, P. J., and Agee, J., concurred.